IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. BARRETT,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, FEDERAL BUREAU OF<br>INVESTIGATION,<br><br>        Defendant. | 2:09-cv-02959-GEB-EFB<br><br><u>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND GRANTING DEFENDANT'S<br>CROSS-MOTION FOR SUMMARY<br>JUDGMENT</u> |

        Pending are cross-motions for summary judgment in this Freedom of Information Act ("FOIA") action, concerning whether Defendant properly withheld documents responsive to Plaintiff's FOIA request under two statutory exemptions: 5 U.S.C. § 552(b)(7)(A) and (7)(D). For the reasons stated herein, Defendant's motion under exemption 5 U.S.C. § 552(b)(7)(A) is granted and Plaintiff's cross-motion on this exemption is denied. Since the documents are found to have been properly withheld under 5 U.S.C. § 552(b)(7)(A), the issue whether 5 U.S.C. § 552(b)(7)(D) exempted the responsive documents from disclosure is not reached.

**I.  LEGAL STANDARD**

        When deciding cross-motions for summary judgment, each motion is evaluated on its own merits, "taking care in each instance to draw all reasonable inferences against the party whose motion is under

1

consideration." B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001); Bryan v. McPherson, 608 F.3d 614, 619 (9th Cir. 2010) (stating all reasonable inferences that can be drawn from the evidence "must be drawn in favor of the non-moving party"). A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If this burden is satisfied, "the non-moving party must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quotations and citation omitted) (emphasis omitted).

FOIA "mandates a policy of broad disclosure of government documents when production is properly requested." Kamman v. U.S. I.R.S., 56 F.3d 46, 48 (9th Cir. 1995) (citing 5 U.S.C. § 552(a)). "An agency may withhold a requested document only if it falls within one of the nine statutory exemptions to the disclosure requirement." Id. (citations omitted). "The delineated exemptions are to be interpreted narrowly." Milner v. U.S. Dept. of the Navy, 575 F.3d 959, 963 (9th Cir. 2009) (quotation omitted). FOIA's "broad provisions favoring disclosure, coupled with the specific exemptions, reveal and present the 'balance' Congress has struck" between "the right of the public to know and the need of the Government to keep information in confidence." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152-53 (1989).

The government has the burden of proving "that a particular document falls within one of the exemptions." Kamman v. U.S. I.R.S., 56 F.3d at 48.

> [The government] may meet this burden by submitting affidavits showing that the information falls within the claimed exemption. In evaluating a claim for exemption, a district court must accord substantial weight to agency affidavits, provided the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of agency bad faith.

Milner v. U.S. Dept. of the Navy, 575 F.3d at 963 (quotation and citation omitted).

## II. BACKGROUND AND SUMMARY JUDGMENT FACTUAL RECORD

Plaintiff claims an interest in solving what is referenced as the Zodiac case. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ("Def's SUF") #4.) The self-described "Zodiac Killer" committed at least five brutal murders and severely injured two other victims in northern California in 1968 and 1969. (Def.'s SUF #1.)

Plaintiff submitted a FOIA request to the Federal Bureau of Investigations ("FBI") on July 17, 2009, in which he sought high resolution copies of all latent fingerprints contained in the Zodiac case. (Def.'s Resp. to Pl.'s Statement of Undisputed Facts ("Pl.'s SUF") #2.) The FBI did not directly investigate the Zodiac crimes; it assisted local law enforcement agencies through forensic examinations which included analysis of latent fingerprints. (Def.'s SUF #3.) The Zodiac crimes remain unsolved. Id. #2.

Defendant identified 24 pages of photographs of latent fingerprints, which are responsive to Plaintiff's FOIA request. (Def.'s SUF #11.) Local law enforcement agencies involved in the investigation of the Zodiac case submitted the fingerprints to the FBI for analysis. Id. #12.

Since the responsive documents were obtained from local law enforcement agencies, the FBI contacted the local agencies regarding

1  Plaintiff's FOIA request. Id. #13. "All three local law enforcement
2  agencies refused to consent to disclosure, requesting that the FBI
3  withhold the latent prints entirely." Id. #14.  The Napa County
4  Sheriff's Department refused to consent by letter, stating:

> This case is still an open homicide investigation . . . . Our office has jurisdiction in this case as one victim was killed in our county and our agency . . . still continues to follow up on leads.
>
> Our agency previously submitted latent prints to your agency to assist in identification of a suspect. These latent prints are crucial to our ongoing criminal investigation . . . . I adamantly want to insure that this evidence is not to be released . . . as to do so would jeopardize the successful prosecution of a suspect in this investigation.

(Hardy Decl., Ex. D.)  The San Francisco Police Department requested the prints be withheld via email, stating:

> Because the San Francisco Police Department's investigation in this matter is open and ongoing, disclosure of documents and case materials may endanger successful investigation. Although a substantial amount of time has passed since the commission of these crimes, the SFPD still receives potential leads and information on the case on a frequent basis.

(Hardy Decl., Ex. E.)  The City of Vallejo Police Department requested the fingerprints be withheld in a telephonic communication. (Def.'s SUF #19.)

### III. DISCUSSION

Defendant argues it properly withheld the latent fingerprints under 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"), which exempts from disclosure "records or information compiled for law enforcement purposes . . . to the extent that [their production] could reasonably be expected to interfere with enforcement proceedings." The parties agree that the latent fingerprints were compiled for "law enforcement purposes." (Pl.'s

4

Mot. 8:26-9:2.) However, they dispute whether production of the latent fingerprints "could reasonably be expected to interfere" with an "enforcement proceeding."

### A.   Enforcement Proceeding

Defendant argues it properly withheld the latent fingerprints under Exemption 7(A) since disclosure could interfere with local law enforcement agencies' ongoing investigations of the Zodiac case. (Def's Mem. of P.&A. in Supp. of Mot. for Summ. J. ("Def's Mot.") 12:21-25.) Plaintiff counters, "[t]he government must show more than an open investigation" before it is authorized to use Exemption 7(A). (Pl.'s Am. Mem. of P.&A. in Supp. of Mot. for Summ. J. ("Pl.'s Mot.") 9:19-20.) Plaintiff further argues, the Zodiac case is "40 year[s] old . . . [and] is receiving little police attention." Id. at 11:9-11.

Under Exemption 7(A), a pending criminal investigation constitutes an "enforcement proceeding." See, e.g., Boyd v. U.S. Dept. of Justice, 475 F.3d 381, 386 (D.C. Cir. 2007) (citing Bevis v. Dept. of State, 801 F.2d 1386, 1387-89 (D.C. Cir. 1986)). The fact that an investigation is "dormant" does not make Exemption 7(A) inapplicable. Cook v. U.S. Dept. of Justice, No. C04-2542L, 2005 WL 2237615, at *2 (W.D. Wash. Sept. 13, 2005) (summary judgment granted to defendant in FOIA action where documents, which concerned investigation of unsolved 1971 airplane hijacking, were withheld under Exemption 7(A)).

The Declaration of David Hardy, Section Chief of the Record/Information Dissemination Section of the FBI, and correspondence from the Napa County Sheriff's Department and San Francisco Police Department attached as exhibits thereto evidence that the Zodiac case investigation is ongoing, and Plaintiff has presented no admissible

evidence that the investigation has been completed or is inactive.[1] (Hardy Decl. ¶¶ 11, 19, 27, Ex. D, Ex. E.) Therefore, Defendant has demonstrated the absence of a genuine issue of material fact as to the existence of an "enforcement proceeding" under Exemption 7(A).

### B. Could Reasonably Be Expected to Interfere

Defendant contends releasing the latent fingerprints can reasonably be expected to interfere with the ongoing Zodiac investigations because, *inter alia,* "[o]ne or more private individuals may seek to identify the Zodiac Killer by the latent prints." (Def.'s Mot. 13:18-20.) Defendant explains further: "[i]f the prints' release led to an identification, the identification could alert a Zodiac Killer suspect to evade capture." Id. at 13:20-22 (citations omitted).

Defendant relies on David Hardy's Declaration as evidence that disclosure of the fingerprints could reasonably be expected to interfere with the "Zodiac Killer" investigations. (Hardy Decl. ¶¶ 11, 19, 27, Ex. D, Ex. E.) Mr. Hardy avers:

> In this case the FBI has asserted Exemption (b)(7)(A) to protect the criminal investigatory evidence identified as Latent Case #A-10042 contained in FBI File 9-HQ-49911. The prints are photographic copies of latent prints provided to the FBI by local California police agencies during their investigations of the Zodiac Killer murders. The murders remain unsolved and are open in several California jurisdictions. As a result of this request, FBIHQ contacted representatives of several California law enforcement agencies who responded that the investigations are pending and requested that the FBI not release the copies of latent prints to the public because to do so could jeopardize their investigations and prosecution of a suspect. . . . The release of the latent print photographs could result in identification of a

---

[1] Plaintiff submitted two newspaper articles to support his position that the Zodiac case is not currently being investigated. (Pl.'s Ex. in Supp. of Mot. for Summ. J., 7 and 8.) Defendant objected to these exhibits as inadmissible hearsay. The objections are sustained.

>  suspect by the plaintiff or another person, and possible notification of said suspect who could evade capture by law enforcement. . . . Indeed, the authorities who are actively investigating this open case have expressed concern that the release of this information could interfere with their investigations. Thus, the FBI has properly applied Exemption (b)(7)(A) to protect the evidentiary material in the latent prints case #A-10042.

(Hardy Decl. ¶¶ 27-28.)

Plaintiff counters Defendant has failed to show how release of the records could reasonably be expected to interfere with an enforcement proceeding since "identification of a suspect is exactly why fingerprints were collected in the first place." (Pl.'s Mot. 12:18-19, 15:20-23.) Plaintiff contends, "while theoretically possible, [the successful identification and notification of the suspect] is extremely remote . . . . and completely unrealistic." Id. at 13:3-4, 18-19 (quotation omitted). Further, Plaintiff responds to the government's interference argument with the declaration of his handwriting expert, Michael Grimm. Mr. Grimm declares:

>  Should identifications be effected in this matter, the San Francisco Field Office of the Federal Bureau of Investigation and/or the San Francisco Police Department Homicide Division will be notified immediately. . . .
>
>  With regard to the FBI's concerns that the release of the latent print photographs . . . could result in someone successfully identifying the "Zodiac Killer" and ultimately notifying the killer so that the person may evade capture, while theoretically possible, the theory is extremely remote. In order for a comparison and identification to be made with the latent prints in this case, the individual comparing the latent prints would need to be proficient in the comparison process. Only through years of latent print comparison experience would the individual be qualified to make a latent print identification. Any individual with that degree of experience would likely be in law enforcement or law enforcement support. Anyone in that position would be inclined to notify the proper authorities due to moral and ethical responsibilities. . . . Furthermore, an

7

> individual would need to have access to fingerprint records, which are typically not available to the general public.
>
> . . . .
>
> By releasing the latent print images to the public would only serve to assist the authorities in identifying the "Zodiac Killer". This would enable latent print examiners throughout the United States the ability to enter these latent prints into local automated fingerprint databases, thereby exponentially increasing the possibility of solving this forty-two year old unsolved case.

(Pl.'s Ex. 4, 2-3.)

Under exemption 7(A) "the government is not required to make a specific factual showing with respect to each withheld document that disclosure would *actually interfere* with a particular enforcement proceeding. The [FBI] need only make a general showing that disclosure . . . [could reasonably be expected to] interfere with its enforcement proceedings." Lewis v. I.R.S., 823 F.2d 375, 380 (9th Cir. 1987) (quotation and citations omitted) (emphasis in original); see generally Halperin v. C.I.A., 629 F.2d 144, 149 (D.C. Cir. 1980) (stating the "court must take into account . . . that any affidavit or other agency statement of [interference] will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm").

Mr. Hardy's declaration contains a "general showing" that disclosure of the fingerprints could interfere with local law enforcement agencies' ongoing investigations of the Zodiac case. Further, even though Mr. Grimm disagrees with Mr. Hardy's ultimate opinion that release of the fingerprints could result in a suspect being notified, Mr. Grimm's averments do not controvert the facts, which underlie Mr. Hardy's opinion. For example, Mr. Grimm avers that

8

releasing the prints would "exponentially increase" the possibility that a suspect be identified. (Pl.'s Ex. 4, 3.) Similarly, Mr. Grimm declares that any individual qualified to make a latent print identification "would be inclined to notify the proper authorities[,]" but this averment does not controvert Mr. Hardy's position that release of the fingerprints could result in possible notification of the suspect. Therefore, Defendant has shown the absence of a genuine issue of material fact that release of the fingerprints could reasonably be expected to interfere with the ongoing enforcement proceedings. See Alyeska Pipeline Service Company v. U.S. E.P.A., 856 F.2d 309 (D.C. Cir. 1988) (finding summary judgment appropriate where federal agency submitted affidavit discharging its burden of showing the absence of a genuine issue of material fact).

## IV. CONCLUSION

For the stated reasons, Defendant's motion for summary judgment on Exemption 7(A) is GRANTED, and Plaintiff's cross-motion for summary judgment motion on this issue is DENIED. Judgment shall be entered in favor of Defendant.

Dated: October 20, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge